Official Address of Defendant The Protestant
Episcopal Diocese of North Carolina:

200 W. Morgan Street
Suite 300
Raleigh, North Carolina 27601-1338

DISTRICT COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Burnie Majeed Sr., Burnie Majeed Jr., and Kenya Majeed,<br><br>            Plaintiffs,<br><br>vs.<br><br>The State of North Carolina, University of North Carolina, and The Episcopal Diocese of North Carolina, Defendants | Case No.: No. 1:07CV00222 (JR)<br><br>DEFENDANT PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS OR TRANSFER |

## DEFENDANT PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS OR TRANSFER

Defendant The Protestant Episcopal Diocese of North Carolina (the "North Carolina Diocese," misnamed the "The Episcopal Diocese of North Carolina" in the Plaintiffs' Complaint), by counsel, and pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, hereby moves this Court to dismiss the Plaintiffs' Complaint for lack of personal jurisdiction over the North Carolina Diocese and improper venue or, in the alternative, to transfer venue of this action to the Eastern District of North Carolina. The reasons supporting this Motion are more fully explained in the accompanying Memorandum of Points and Authorities In Support Of Defendant Protestant Episcopal Diocese Of North Carolina's Motion To Dismiss Or Transfer and in the Affidavit of Marlene Weigert attached as Exhibit A to that Memorandum.

WHEREFORE, the North Carolina Diocese requests that the Court grant its motion and dismiss the Plaintiffs' Complaint against it.

February 23, 2007

                                                   /s/ James Sottile

James Sottile (D.C. Bar No. 395736)
Maryll W. Toufanian (D.C. Bar No. 486672)

Zuckerman Spaeder LLP
1800 M Street NW
Suite 1000
Washington, DC 20036-5802
202-778-1800 (telephone)
202-822-8106 (facsimile)
jsottile@zuckerman.com (email)

Official Address of Defendant The Protestant
Episcopal Diocese of North Carolina:

200 W. Morgan Street
Suite 300
Raleigh, North Carolina 27601-1338

DISTRICT COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Burnie Majeed Sr., Burnie Majeed Jr., and Kenya Majeed,<br><br>           Plaintiffs,<br><br>vs.<br><br>The State of North Carolina, University of North Carolina, and The Episcopal Diocese of North Carolina, Defendants | Case No.: No. 1:07CV00222 (JR)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS OR TRANSFER |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS OR TRANSFER

Defendant the Protestant Episcopal Church in the Diocese of North Carolina (the "North Carolina Diocese" or "Diocese") moves to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(2) and (3). The Plaintiffs have failed to meet their burden of demonstrating that this Court has personal jurisdiction over the Diocese and cannot do so because there simply is no connection between the District and the Diocese or the subject matter of the complaint. The North Carolina Diocese is based in North Carolina and has no employees, assets, or offices in the District of Columbia and does no business here. Moreover, the wrongs alleged in the complaint all center on acts taken in North Carolina concerning property located in North Carolina. This case must therefore be dismissed for lack of personal jurisdiction over the North Carolina Diocese.

Even if personal jurisdiction could be established, venue for the Plaintiffs' complaint is improper in the District of Columbia and would be proper – if at all – only in the Eastern District of North Carolina, where the Diocese is headquartered. In the event this Court concludes that personal jurisdiction can be exercised over the Diocese, this action must therefore be dismissed for improper venue or, in the alternative, transferred to the Eastern District of North Carolina.

## Factual Allegations And Background

### A. The Allegations Of The Plaintiffs' Complaint As They Relate To Personal Jurisdiction Over The North Carolina Diocese

The Plaintiffs' Complaint does not allege any facts to support personal jurisdiction over the North Carolina Diocese in the District of Columbia. There is no allegation that the Diocese does business in, or has any connection to, the District. Additionally, the acts the Plaintiffs allege all occurred in North Carolina.

The Plaintiffs' Complaint alleges that the Plaintiffs' ancestor several generations ago was a North Carolina resident. This North Carolina resident was allegedly defrauded out of an inheritance – land in North Carolina – by another North Carolina resident, who allegedly misused the probate process of a North Carolina court or misled that court into naming her the administrator of the estate of another North Carolina resident. As a result of this conduct, the Plaintiffs allege, land in North Carolina was given to two North Carolina institutions: the North Carolina Diocese and the University of North Carolina. Indeed, there is no mention in the Plaintiffs' Complaint, or any of the attachments to it, of any connection between the acts complained of and the District of Columbia.

### B. There Are No Facts Connecting The North Carolina Diocese To The District Of Columbia

Plaintiffs make no allegations regarding a connection between the North Carolina Diocese and the District of Columbia because they cannot. To demonstrate the lack of any facts supporting personal jurisdiction over the North Carolina Diocese, the Diocese submits as Exhibit

A hereto the sworn affidavit of Marlene Weigert, the Canon to the Ordinary for Administration for the North Carolina Diocese (the "Weigert Affidavit"). Ms. Weigert is fully familiar with the operations and activities of the North Carolina Diocese, and her affidavit is based on that personal knowledge. *Weigert Aff.* at 4.

As the Weigert Affidavit demonstrates, the Diocese does not have any connection of any substance to the District of Columbia sufficient to justify this Court's personal jurisdiction over the North Carolina Diocese. *Weigert Aff.* at ¶¶ 9-17. The Diocese owns no property in the District of Columbia, has no employees here, and does not have an office, a bank account, or even a telephone number here. *Weigert Aff.* at ¶¶ 9, 13-15. Furthermore, the North Carolina Diocese does not advertise in the District of Columbia, nor does it have an agent for service of process here. *Weigert Aff.* at ¶¶ 10-11. It has no license to transact business here, and it does not do so. *Weigert Aff.* at ¶¶ 12, 16.

Indeed, all of the North Carolina Diocese's activities are conducted within North Carolina, in keeping with its mission and function to support and lead Episcopalians and their churches in North Carolina. *Weigert Aff.* at ¶¶ 6-8. It conducts ministry training and other educational programs in North Carolina. *Weigert Aff.* at ¶ 7. It exists as a religious entity pursuant to Chapter 61 of the North Carolina Statutes (governing religious entities). *Weigert Aff.* at 5. Indeed, its jurisdiction within the Episcopal faith is limited to the State of North Carolina. *Weigert Aff.* at ¶ 8.

## Argument

I. **The Plaintiffs Have Not Met Their Burden Of Demonstrating That This Court Has Personal Jurisdiction Over The North Carolina Diocese**

The Plaintiffs bear the "burden of demonstrating the factual bases for personal jurisdiction, and must allege specific facts that connect the defendant with the forum state without relying on bare allegations or conclusory statements." *Oil, Chemical & Atomic Workers*

*Int'l Union of AFL-CIO v. Pena,* 18 F. Supp. 2d 6, 16-17 (D.D.C. 1998)(citing *First Chicago Int'l v. United Exchange Co.,* 836 F.2d 1375, 1378 (D.C. Cir. 1988)).

Plaintiffs have not even attempted to meet this burden. They allege no facts, in either their Complaint or its attachments, that connect the North Carolina Diocese with the District of Columbia. In the absence of any showing whatsoever of a connection between the North Carolina Diocese and the District of Columbia, the Plaintiffs have failed to meet their burden, and their Complaint must be dismissed for lack of personal jurisdiction over the Diocese.

## II. There Are No Facts Plaintiffs Could Allege Which Would Sufficiently Establish Personal Jurisdiction Over The North Carolina Diocese In This Court

Even if the Plaintiffs had attempted to meet their burden of demonstrating sufficient facts supporting personal jurisdiction, they could not do so because there is no set of facts the Plaintiffs could credibly allege sufficient for this Court to assert personal jurisdiction over the North Carolina Diocese.

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: a court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Marshall v. Labor & Industries, State of Washington* ("*Marshall v. State of Washington*"), 89 F. Supp. 2d 4, 8-9 (D.D.C. 2000) (*citing GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C.Cir. 2000) *and U.S. v. Ferrara,* 54 F.3d 825, 828 (D.C. Cir. 1995)).

In relevant part,[1] the District of Columbia's long-arm statute provides:

### § 13-423. Personal jurisdiction based upon conduct.

---

[1] Section 13-422 provides that a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." There is no allegation in the Plaintiffs' Complaint that the North Carolina Diocese is domiciled in, organized under the laws of, or has its principal place of business in the District, and as the Weigert Affidavit demonstrates, it is not.

-4-

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
> (1) transacting any business in the District of Columbia;
>
> \* \* \*
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>
> (5) having an interest in, using, or possessing real property in the District of Columbia…
>
> \* \* \*
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

None of the grounds for exercising jurisdiction under the long-arm statute can be satisfied here. The claim is not alleged to arise from the transaction of business by the Diocese in the District of Columbia, and in fact the Diocese does not regularly transact any business in the District. Nor is the claim alleged to arise from any tortious injury suffered in the District of Columbia. Instead, the claim is alleged to arise from acts in North Carolina that allegedly caused injury in North Carolina.

*Marshall v. State of Washington, supra,* illustrates the application of this statute to a case factually similar to this one. In that case, plaintiff Marshall filed suit in the District of Columbia, alleging that the defendant, the State of Washington, improperly managed his workers' compensation claim. *Marshall v. State of Washington,* 89 F. Supp. 2d at 7-8. The State of Washington moved to dismiss the suit for lack of personal jurisdiction over it. The court agreed with the State that the long-arm statute did not reach the State, finding that "none of the

requirements of the long-arm statute have been met. The [State of Washington agencies] do not solicit or transact business with the District of Columbia, nor was there any action taken by defendants causing harm within the District of Columbia." *Id.* at 9.

The *Marshall* analysis applies squarely to the Plaintiffs' Complaint, and requires dismissal of it for the same reasons. The Plaintiffs do not allege that the North Carolina Diocese transacts any business within the District of Columbia, nor do they allege that the Diocese caused any harm within the District of Columbia.

Even if the long-arm statute could be satisfied, there are not sufficient "minimum contacts" between the District of Columbia and the North Carolina Diocese to satisfy constitutional due process. To do so, "a plaintiff must show 'minimum contacts' between the defendant and the forum so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marshall v. State of Washington, supra,* at 9; *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). These minimum contacts must consist of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102, 108-09 (1987); *see also Marshall v. State of Washington, supra* at 9-10.

Just as with the analysis of personal jurisdiction under the District of Columbia's long-arm statute, *Marshall v. State of Washington, supra,* illustrates the application of the constitutional due process analysis. After that Court found that the District's long-arm statute was not satisfied, the Court went on to analyze whether any set of facts before it could meet the due process requirement. The Court held that due process could not be satisfied because the State of Washington had no agencies or offices in the District, and performed no commercial activities here. *Marshall v. State of Washington,* 89 F. Supp. 2d at 10. Moreover, the Court held that the State of Washington's activity of administering workers' compensation claims inside its

own boundaries could not give rise to a reasonable assumption on the State's part that it would be sued in the District of Columbia for that activity.

Other courts weighing personal jurisdiction have looked to facts similar to the *Marshall* court in determining whether the "minimum contacts" test is satisfied. In *AGS Int'l Servs. S.A. v. Newmont USA Ltd.,* 346 F. Supp. 2d 64, 76 n.20 (D.D.C. 2004), the Court considered, among other facts, the defendant's lack of a phone number, bank account, agent for service of process, business license, or owned or leased property in the District of Columbia before concluding that the defendant lacked sufficient contacts to satisfy due process. In *Savage v. Bioport, Inc.,* 460 F. Supp. 2d 55 (D.D.C. 2006), the Court concluded that it had no personal jurisdiction over a defendant without property, a phone number, an office, employees, or a registered agent in the District of Columbia – even though that defendant had sales contracts with Federal agencies, shipped products to the Department of Defense, and advertised in a Capitol Hill newspaper.

Just as in these cases, the uncontested facts here demonstrate that the exercise of personal jurisdiction over the Diocese in the District of Columbia would deny the Diocese due process. The Diocese has no offices or employees here. *Weigert Aff.* at ¶9, 15. It does not transact business here and has no phone number, bank account, or property here. *Weigert Aff.* at ¶¶ 8-17. Moreover, the North Carolina Diocese could not reasonably expect that its religious activities, focused as they are on the Episcopalians and Episcopal churches of North Carolina, would lead to it being sued in the District of Columbia.

The North Carolina Diocese has no connection to the District of Columbia sufficient to satisfy either the District's long-arm statute or the constitutional requirements of due process. Therefore, this Court lacks personal jurisdiction over the Diocese, and the Plaintiffs' Complaint should be dismissed.

### III. Even If Personal Jurisdiction Existed Over The Diocese, Venue In This Court Would Be Inappropriate

Courts should first ascertain whether they have personal jurisdiction before determining whether venue is proper. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 178; 99 S.Ct. 2710, 2715 ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."); *Liban v. Churchey Group II, LLC,* 305 F. Supp. 2d 136, 139 n.1 (D.D.C. 2004)(*citing Cameron v. Thornburgh,* 983 F.2d 253, 257 n.3 (D.C.Cir. 1993)). As shown above, this Court has no personal jurisdiction over the North Carolina Diocese and should dismiss this action for that reason without reaching the issue of venue. If this Court finds otherwise, though, it is clear that venue in this Court is improper, and this case must be dismissed or, in the alternative, transferred to the Eastern District of North Carolina, where the North Carolina Diocese is headquartered.

In the absence of a specific statute governing venue, venue in federal courts is governed by 28 U.S.C. §1391. Under §1391, venue depends in part on the alleged basis for federal jurisdiction. While the Plaintiffs' causes of action are not clear, they appear to be attempting to state, in part, an action based on violations of federal civil rights laws and perhaps violations of provisions of the U.S. Constitution. *See, e.g.,* Plaintiffs' Complaint, p. 5 ("During the time when these acts were committed our family could not bring this complaint to justice due to prejudice, and ignorance of color issues…. The federal courts did not have jurisdiction to acknowledge such lawsuit before 1974.").

Assuming the Complaint is premised on the existence of a federal question, as it appears to be, venue in this court is inappropriate.[2] In actions not based solely on diversity, venue is appropriate in either: "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). Venue is improper in this Court under any of these alternatives. First, there is no allegation that any of the defendants in this case reside in the District of Columbia, and, in fact, none do. Second, there is no allegation that any of the events or omissions giving rise to the Plaintiffs' Complaint – let alone a "substantial part" of them – occurred in the District of Columbia. There is no mention of the District in the Plaintiffs' Complaint, and the acts complained of appear to have occurred, if at all, in North Carolina. Finally, this Complaint can be brought in another district – the Eastern District of North Carolina, where all the defendants may be found, and thus § 1391(b)(3) is not available as a basis for venue in the District of Columbia.

Therefore, even if this Court finds that it has personal jurisdiction over the North Carolina Diocese, this action should be dismissed for improper venue. In the alternative, this Court may transfer this action to the Eastern District of North Carolina, which includes the Diocese's Raleigh headquarters.

---

[2] Venue would also be improper if the Complaint alleged diversity jurisdiction, as the proper venues for cases based on diversity jurisdiction are substantially the same as for cases based on federal question jurisdiction. *Compare* 28 U.S.C. § 1391(a) *with* 28 U.S.C. § 1391(b).

## Conclusion

The Plaintiffs have failed to meet their burden of demonstrating that this Court has personal jurisdiction over the North Carolina Diocese. Moreover, the Plaintiffs cannot meet that burden, because the Diocese does not have sufficient contacts with the District of Columbia to satisfy either the District's long-arm statute or constitutional due process. Even if this Court had personal jurisdiction, venue in this Court is not appropriate, and this action would have to be dismissed or transferred to the Eastern District of North Carolina. Therefore, the North Carolina Diocese requests this Court dismiss the Plaintiffs' Complaint for lack of personal jurisdiction or improper venue or, alternatively, transfer this case to the Eastern District of North Carolina.

February 23, 2007

_____
James Sottile (D.C. Bar No. 395736)
Maryll W. Toufanian (D.C. Bar No. 486672)

Zuckerman Spaeder LLP
1800 M Street NW
Suite 1000
Washington, DC 20036-5802
202-778-1800 (telephone)
202-822-8106 (facsimile)
jsottile@zuckerman.com (email)

# EXHIBIT A

James Sottile
Zuckerman Spaeder LLP
1800 M Street NW
Suite 1800
Washington, DC 20036-5802

Attorney for Defendant

DISTRICT COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Burnie Majeed Sr., Burnie Majeed Jr., Kenya Majeed, <br><br>　　　　　Plaintiff, <br>　　vs. <br>The State of North Carolina, University of North Carolina, The Episcopal Diocese of North Carolina, Defendants | Case No.: No. 1:07CV00222 <br><br>AFFIDAVIT OF MARLENE WEIGERT IN SUPPORT OF MEMORANDUM IN SUPPORT OF DEFENDANT EPISCOPAL DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS |

## AFFIDAVIT OF MARLENE WIEGERT IN SUPPORT OF THE EPISCOPAL DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS FOR LACK OF JURISDICTION

1. My name is Marlene Weigert. I make this affidavit under oath, and of my own personal knowledge.

2. I am the Canon to the Ordinary for Administration for the Protestant Episcopal Church in the Diocese of North Carolina (the "North Carolina Diocese").

3. I have held this position for 1.5 years.

4. In my role as Canon to the Ordinary for Administration, I am responsible to assist the Bishop of North Carolina in all areas of his pastoral ministry; to support clergy and lay people in the exercise of their office and ministry and advise the Bishop in all matters, but particularly those involving the financial, business and administrative affairs of the Diocese. I also

1

occasionally advise parishes or missions within the Diocese concerning their internal business and financial matters.

5. The North Carolina Diocese is organized as a religious society pursuant to Chapter 61 of the North Carolina Statutes.

6. The North Carolina Diocese exists to provide spiritual and religious guidance and leadership to Episcopalians and Episcopal congregations in North Carolina.

7. The North Carolina Diocese's functions include providing training for the ministry in order to provide capable spiritual leadership for Episcopal congregations in North Carolina.

8. All of the Episcopal congregations subject to the leadership and jurisdiction of the North Carolina Diocese are located in North Carolina.

9. The North Carolina Diocese has no office in the District of Columbia.

10. The North Carolina Diocese has no agent for service of process in the District of Columbia.

11. The North Carolina Diocese does not advertise in any publications based in the District of Columbia, nor on any broadcast media in the media market including the District of Columbia.

12. The North Carolina Diocese has no license to transact business in the District of Columbia, and has never applied for any.

13. The North Carolina Diocese does not have a phone number in the District of Columbia.

14. The North Carolina Diocese does not have a bank account in the District of Columbia.

15. The North Carolina Diocese has no employees based in the District of Columbia.

16. The North Carolina Diocese does not solicit or transact business in the District of Columbia, nor does it purposefully direct its business efforts toward the District of Columbia and its residents.

~~16~~. 17. To the best of my knowledge, the North Carolina Diocese has no contacts of a continuous and systematic nature with the District of Columbia.

FURTHER, AFFIANT SAYETH NAUGHT.

*Marlene Weigert*
Marlene Weigert, Canon to the Ordinary for Administration
of the Protestant Episcopal Church in the Diocese of North Carolina

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I, _Donna W. Gundrum_, a Notary Public of WAKE County, North Carolina, do hereby certify that the following person(s) (the "Signatory(ies)") personally appeared before me this day: _February 21, 2007_.

I certify that *(check one of the following)*

☑ I have personal knowledge of the identity of the Signatory(ies); **or**
☐ I have seen satisfactory evidence of the Signatory(ies)'s identity, by a current state or federal identification with the Signatory(ies)'s photograph in the form of:
   *(check one of the following)*
   ☐ a driver's license *or*
   ☐ in the form of _____; **or**
☐ a credible witness has sworn to the identity of the Signatory(ies).

The Signatory(ies) acknowledged to me that he/she/each of them has/have voluntarily signed the foregoing document for the purpose stated therein.

Witness my hand and official stamp or seal this _21st_ day of _February_, 2007.

_Donna W. Gundrum_
Notary Public

Print Name: _Donna W. Gundrum_
*(Note: Notary must sign exactly as on notary seal)*

My Commission Expires: _4-13-2009_

[NOTARY SEAL]
**(MUST BE FULLY LEGIBLE)**

4

DISTRICT COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Burnie Majeed Sr., Burnie Majeed Jr., and Kenya Majeed, <br><br> Plaintiffs, <br><br> vs. <br><br> The State of North Carolina, University of North Carolina, and The Episcopal Diocese of North Carolina, Defendants | ) Case No.: No. 1:07CV00222 (JR) <br> ) <br> ) Judge James Robertson <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PROPOSED ORDER GRANTING THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NORTH CAROLINA'S MOTION TO DISMISS**

Upon the Motion of Defendant The Protestant Episcopal Church In The Diocese of North Carolina, and all papers and responses related thereto, it is hereby

ORDERED, this _____ day of _____, 2007, that the Plaintiffs' Complaint against Defendant The Protestant Episcopal Church In The Diocese of North Carolina be, and hereby is, DISMISSED; and that judgment be entered in favor of Defendant Protestant Episcopal Diocese of North Carolina.

_____
Honorable James Robertson, U.S.D.J.